IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**HERMAN LEE HAYES, JR.,**

Petitioner,

v.                                                             Civil Action No. **3:16CV144**

**DIRECTOR, VA. DEPT. OF CORR.,**

Respondent.

## MEMORANDUM OPINION

Herman Lee Hayes, Jr., a Virginia state prisoner proceeding *pro se*, brings this petition

pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 1) challenging his convictions in the

Circuit Court for the City of Virginia Beach, Virginia ("Circuit Court"). Respondent moves to

dismiss on the ground that, *inter alia*, the one-year statute of limitations governing federal habeas

petitions bars the § 2254 Petition. Despite receiving *Roseboro*[1] notice as well as an extension of

time, Hayes has not filed a response to the Motion to Dismiss. Hayes has also filed a Motion for

Discovery. (ECF No. 8.) For the reasons set forth below, Respondent's Motion to Dismiss (ECF

No. 15) will be GRANTED, and Hayes's Motion for Discovery (ECF No. 8) will be DENIED.

## I. PERTINENT PROCEDURAL HISTORY

On February 13, 2008, a jury convicted Hayes of simple assault or assault and battery of

a law enforcement officer, two counts of abduction, attempted robbery, robbery, eluding police-

endangerment, four counts of use of a firearm in the commission of a felony, wearing a mask in

public, resisting arrest, and driving on a suspended or revoked operator's license.

*Commonwealth v. Hayes*, Nos. CR06–1656/CR06–1635, at 1 (Va. Cir. Ct. Sept. 15, 2008).

Following a bench trial on July 29, 2008, Hayes was convicted of possession of a firearm by a

---

[1] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

violent felon. *Id.* On September 15, 2008, the Circuit Court entered final judgment and sentenced Hayes to a total sentence of 31 years and 36 months. *Id.* at 2.

Hayes appealed to the Court of Appeals of Virginia, arguing that the Circuit Court erred by: (1) denying his motion to dismiss the abduction charges because the restraint employed was inherent in the crime of robbery; (2) denying his motion to retest DNA located on the firearm; and (3) finding that the evidence was sufficient to support his convictions for two counts of abduction, four counts of use of a firearm in the commission of a felony, and one count each of attempted robbery, robbery, eluding, wearing a mask in public, resisting arrest, assault and battery on a police officer, and driving on a suspended license. (ECF No. 16–1, at 1–4.) The Court of Appeals denied Hayes's appeal. (*Id.* at 1.) With respect to the sufficiency of the evidence, the Court of Appeals stated:

> [T]he evidence showed that Paul Miller was employed by Aristocrat Towing and, on the day in question, he was towing vehicles near the oceanfront. Miller testified appellant approached him and asked if a certain car had been towed. Miller checked and told appellant that the car was in the impound lot of Aristocrat Towing. Miller agreed to drive appellant to Aristocrat Towing. When Miller arrived at Aristocrat Towing, Philip Watson was standing outside the locked gate. Miller testified appellant stated he did not have the money to get his car, but he wanted to get a few items from the car. Miller next testified that he told appellant he could go to his car to retrieve the items. Miller and Watson then entered the office to complete the paperwork for Watson's car.
> Miller then testified appellant entered the office with a bandana over the bottom part of his face, covering everything but his eyes, and pointed a firearm at Miller and Watson, demanded money, and told them to get down on the floor. Miller further testified appellant took Watson's wallet and Watson's eighty-five dollars on the counter and demanded the money in the safe. Miller told appellant that he did not know the combination. Miller testified he told appellant there was no more money and to just leave. In response, appellant told him and Watson to walk outside in order for Miller to unlock the gate of the impound lot. Finally, Miller testified appellant forced them outside at gunpoint and he unlocked the gate. Prior to leaving, appellant told the men to return to the office, get on the floor, and not call the police. The men returned to the office as appellant instructed.
> . . . .

2

The evidence showed that after appellant left Aristocrat Towing, Miller called the police and gave the necessary information to the police. Approximately ten minutes later, Sergeant Daniel Fiore saw the car. Fiore followed the car and activated his emergency lights, but the driver did not stop. Detective Conklin heard the dispatch and drove behind Fiore. At trial, Conklin testified he saw only one individual in the car. Fiore testified the driver stopped when he reached a dead-end street in a residential neighborhood. Fiore testified he saw only one person in the car and he only briefly lost sight of the car during the pursuit. Moreover, Fiore testified he saw one man jump from the car and run into the woods. Additionally, Fiore testified he could not identify the driver's face, but he could identify the driver's clothes.

Officer Jay Keatley with a K-9 unit assisted in the search, and the officers found appellant hiding in a child's playhouse approximately two hours later. The playhouse was in the backyard of a house near the abandoned car. In this regard, Fiore testified that the man in the playhouse was wearing the same jacket as the driver of the car.

Upon arrest of the appellant, the officers did not find a firearm in appellant's possession or in the car, but the officers did find a firearm on the other side of a privacy fence of the backyard where appellant was found hiding. Conklin testified the firearm was within a foot of the fence line. Miller identified the firearm found near the fence as the one appellant possessed.

In the car, the officers found an open beer bottle with appellant's fingerprints on the bottle. A DMV transcript showed that appellant's driving privilege was suspended at the time of the incident. The dash video from Fiore's vehicle showing the pursuit was admitted into evidence.

Appellant denied being at Aristocrat Towing, denied robbing Miller and Watson, and denied being the driver of the car. Appellant testified he was with his cousin, Eugene Hayes, and an acquaintance by the name of Troy, at a nightclub. Appellant testified that the three of them left the nightclub with Troy driving. Appellant testified he was in the passenger seat drinking a beer and fell asleep. Appellant further testified that when he woke up, he heard Troy yelling profanities and saw a police vehicle chasing them. He stated that he jumped out of the car when Troy made a turn. Moreover, appellant testified he later saw Troy running in the area and that Troy could have discarded the firearm behind the fence. Appellant testified he ran through various backyards, jumped fences, and went inside the playhouse because he was very tired. Finally, appellant testified he woke up because a dog was biting him. Appellant explained it was difficult to put his hands up because of the dog. Appellant explained that the dash video showed Troy driving the car.

Appellant explained that his DNA was transferred to the firearm because he was very sweaty when Troy and Eugene helped him into the car and that Troy transferred appellant's DNA to the firearm when Troy later touched the firearm. Appellant admitted he was a convicted felon.

. . . .

The jury heard the testimony of the witnesses and observed their demeanor. At the conclusion of the evidence, the jury evaluated the conflicts in

the testimony and necessarily determined that the testimony by the Commonwealth's witnesses was more credible than appellant's testimony. It was for the fact finder to determine whether appellant's testimony was self-serving testimony given in an attempt to conceal his guilt. There was sufficient evidence supporting the jury's verdict. The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that appellant was guilty of two counts of abduction, one count each of attempted robbery, robbery, eluding, wearing a mask in public, resisting arrest, four counts of use of a firearm in the commission of a felony, and one count of driving on a suspended license.

(*Id.* at 1–6.) On January 22, 2010, the Supreme Court of Virginia refused Hayes's petition for appeal. (ECF No. 16–2, at 1.) Hayes did not file a petition for a writ of habeas corpus in the Virginia courts.

On or about February 25, 2016, Hayes filed his § 2254 Petition in this Court.[2] (§ 2254 Pet. 9.) In his § 2254 Petition, Hayes asserts the following claim for relief:

Claim One:   "The evidence in its totality was insufficient to establish guilt beyond a reasonable doubt in violation of my 14th [A]mendment right to due process."[3] (*Id.* at 2 (emphasis omitted).)

## II. ANALYSIS

### A.   Statute of Limitations

Respondent contends that the federal statute of limitations bars Hayes's claim. Section 101 of the Antiterrorism and Effective Death Penalty Act ("AEDPA") amended 28 U.S.C. § 2244 to establish a one-year period of limitation for the filing of a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court. Specifically, 28 U.S.C. § 2244(d) now reads:

---

[2] This is the date that Hayes states he placed his § 2254 Petition in the prison mailing system for mailing to this Court. The Court deems this the filed date. *See Houston v. Lack*, 487 U.S. 266, 276 (1988).

[3] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

1.  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

    **(A)**  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    **(B)**  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    **(C)**  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    **(D)**  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

2.  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

**B.**     **Commencement and Running of the Statute of Limitations**

The Supreme Court of Virginia refused Hayes's petition for appeal on January 22, 2010. Hayes's convictions became final on Thursday, April 22, 2010, when the time to file a petition for a writ of certiorari expired. *See Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002) ("[T]he one-year limitation period begins running when direct review of the state conviction is completed or when the time for seeking direct review has expired . . . ." (citing 28 U.S.C. § 2244(d)(1)(A))); Sup. Ct. R. 13(1) (requiring that a petition for certiorari should be filed within ninety days of entry of judgment by the state court of last resort or of the order denying discretionary review). The limitation period began to run on April 23, 2010, and Hayes had until April 23, 2011 to file his § 2254 Petition.[4] Hayes failed to file his § 2254 Petition until February

---

[4] Hayes is not entitled to any statutory tolling under 28 U.S.C. § 2244(d)(2) because he failed to file any state habeas petitions.

25, 2016, nearly five years after the limitation period expired. Hayes does not suggest any plausible basis for a belated commencement of the limitation period under 28 U.S.C. § 2244(d)(1)(B)–(D) or equitable tolling. Instead, Hayes argues that his actual innocence excuses his failure to file in a timely manner.

### C.    Actual Innocence

The Supreme Court has recognized actual innocence as a basis for overcoming the expiration of the statute of limitations. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013) (explaining that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations"). "Claims of actual innocence, whether presented as freestanding ones or merely as gateways to excuse a procedural default, should not be granted casually." *Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998) (citations omitted). Here, the Court reviews Hayes's arguments under the more lenient standard for gateway actual innocence claims, because subscribing to Hayes's actual innocence claim would permit the Court to consider the merits of his otherwise time-barred habeas petition.

A gateway claim requires a petitioner to present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence— that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Id.* If a petitioner meets the burden of producing new, truly reliable evidence of his or her innocence, the Court then considers "'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial'" and determines whether the petitioner has met the

6

standard for a gateway claim of innocence. *House v. Bell*, 547 U.S. 518, 538 (2006) (quoting *Schlup*, 513 U.S. at 327–28). The Court must determine "whether 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Sharpe v. Bell*, 593 F.3d 372, 377 (4th Cir. 2010) (quoting *Schlup*, 513 U.S. at 327–28). "The Court need not proceed to this second step of the inquiry unless the petitioner first supports his or her claim with evidence of the requisite quality." *Hill v. Johnson*, No. 3:09cv659, 2010 WL 5476755, at *5 (E.D. Va. Dec. 30, 2010) (citing *Weeks v. Bowersox*, 119 F.3d 1342, 1352–53 (8th Cir. 1997); *Feaster v. Beshears*, 56 F. Supp. 2d 600, 610 (D. Md. 1999)). Moreover, actual innocence means factual innocence and not just legal insufficiency. *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (citation omitted).

Here, Hayes's assertion of actual innocence is not coupled with any new evidence of his actual innocence. Rather, Hayes supports his assertion of innocence with the same arguments and based on the same testimony that he presented at trial, which was that he was sleeping, woke up when he heard the driver yell that the police were following them, jumped out of the car, and ran through various backyards before he stopped to fall asleep in a child's playhouse. (§ 2254 Pet. 4–5.) He also contends that the police failed to recover his fingerprints from the door of the tow truck, and that he was "wearing a jacket that was completely different from the one that the perpetrator allegedly wore." (*Id.* at 5.) According to Hayes, the victim described the perpetrator as wearing a camo jacket, but he was wearing a blue jacket that evening. (*Id.*) Hayes's bare assertion of innocence and his rehashing of his trial testimony simply fails to excuse the untimeliness of his § 2254 Petition. *See Lowe v. Zook*, No. 3:15CV631, 2016 WL 3912035, at *4 (E.D. Va. July 19, 2016) (citing *Hill*, 2010 WL 5476755, at *5). Accordingly, Respondent's Motion to Dismiss (ECF No. 15) will be GRANTED.

7

### III.    OUTSTANDING MOTION

Hayes has also filed a Motion for Discovery. (ECF No. 8.) Hayes requests that Respondent provide copies of any statements or confessions made by Hayes to law enforcement, as well as "any written reports of autopsies, ballistic tests, fingerprint analyses, handwriting analyses, blood, urine and breath tests, other scientific reports, and written reports of a physical or mental examination of the Petition or the alleged victim . . . ." (*Id.* at 1.) Hayes also requests that Respondent provide "all information of whatever form, source or nature that tends to exculpate the Petitioner . . . ." (*Id.*) Finally, Hayes requests that the Court direct Respondent "to conduct testing/retesting on items collected during the investigation of the criminal action . . . ." (*Id.* at 2.) Hayes contends that he requires these items so that he can locate evidence that demonstrates "a jury would not [have found him] guilty." (Br. Supp. Mot. for Discovery 5, ECF No. 9.)[5]

Rule 6(a) of the Rules Governing Section 2254 Cases provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure . . . ." Rules Governing § 2254 Cases Rule 6(a). Good cause for discovery under Rule 6(a) is shown "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is[] entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 909 (1997) (citation omitted). Rather than providing specific allegations to suggest that he is entitled to relief, Hayes appears to desire to engage in a fishing expedition to locate evidence that he believes would support his claim of innocence. Hayes therefore fails to demonstrate good cause to warrant discovery. Accordingly, his Motion for Discovery (ECF No. 8) will be DENIED.

---

[5] The Court utilizes the pagination assigned to this submission by the CM/ECF docketing system.

8

## IV.  CONCLUSION

For the foregoing reasons, Respondent's Motion to Dismiss (ECF No. 15) will be GRANTED.  Hayes's claim will be DISMISSED, and his § 2254 Petition will be DENIED. Hayes's Motion for Discovery (ECF No. 8) will be DENIED.  The action will be DISMISSED. A certificate of appealability will be DENIED.[6]

An appropriate Final Order shall issue.

/s/

Roderick C. Young
United States Magistrate Judge

Date: February 3, 2017
Richmond, Virginia

---

[6] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1)(A).  A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  Hayes fails to meet this standard.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

```
┌─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ┐
│  F I L E            │
│     FEB - 3 2017    │
│  CLERK, U.S. DISTRICT COURT │
│       RICHMOND, VA  │
└─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ┘
```

HERMAN LEE HAYES, JR.,

    Petitioner,

v.

                                           Civil Action No. **3:16CV144**

DIRECTOR, VA. DEPT. OF CORR.,

    Respondent.

## MEMORANDUM OPINION

Herman Lee Hayes, Jr., a Virginia state prisoner proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 1) challenging his convictions in the Circuit Court for the City of Virginia Beach, Virginia ("Circuit Court"). Respondent moves to dismiss on the ground that, *inter alia*, the one-year statute of limitations governing federal habeas petitions bars the § 2254 Petition. Despite receiving *Roseboro*[1] notice as well as an extension of time, Hayes has not filed a response to the Motion to Dismiss. Hayes has also filed a Motion for Discovery. (ECF No. 8.) For the reasons set forth below, Respondent's Motion to Dismiss (ECF No. 15) will be GRANTED, and Hayes's Motion for Discovery (ECF No. 8) will be DENIED.

## I. PERTINENT PROCEDURAL HISTORY

On February 13, 2008, a jury convicted Hayes of simple assault or assault and battery of a law enforcement officer, two counts of abduction, attempted robbery, robbery, eluding police-endangerment, four counts of use of a firearm in the commission of a felony, wearing a mask in public, resisting arrest, and driving on a suspended or revoked operator's license. *Commonwealth v. Hayes*, Nos. CR06–1656/CR06–1635, at 1 (Va. Cir. Ct. Sept. 15, 2008). Following a bench trial on July 29, 2008, Hayes was convicted of possession of a firearm by a

---

[1] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

violent felon. *Id.* On September 15, 2008, the Circuit Court entered final judgment and sentenced Hayes to a total sentence of 31 years and 36 months. *Id.* at 2.

Hayes appealed to the Court of Appeals of Virginia, arguing that the Circuit Court erred by: (1) denying his motion to dismiss the abduction charges because the restraint employed was inherent in the crime of robbery; (2) denying his motion to retest DNA located on the firearm; and (3) finding that the evidence was sufficient to support his convictions for two counts of abduction, four counts of use of a firearm in the commission of a felony, and one count each of attempted robbery, robbery, eluding, wearing a mask in public, resisting arrest, assault and battery on a police officer, and driving on a suspended license. (ECF No. 16-1, at 1-4.) The Court of Appeals denied Hayes's appeal. (*Id.* at 1.) With respect to the sufficiency of the evidence, the Court of Appeals stated:

> [T]he evidence showed that Paul Miller was employed by Aristocrat Towing and, on the day in question, he was towing vehicles near the oceanfront. Miller testified appellant approached him and asked if a certain car had been towed. Miller checked and told appellant that the car was in the impound lot of Aristocrat Towing. Miller agreed to drive appellant to Aristocrat Towing. When Miller arrived at Aristocrat Towing, Philip Watson was standing outside the locked gate. Miller testified appellant stated he did not have the money to get his car, but he wanted to get a few items from the car. Miller next testified that he told appellant he could go to his car to retrieve the items. Miller and Watson then entered the office to complete the paperwork for Watson's car.
>
> Miller then testified appellant entered the office with a bandana over the bottom part of his face, covering everything but his eyes, and pointed a firearm at Miller and Watson, demanded money, and told them to get down on the floor. Miller further testified appellant took Watson's wallet and Watson's eighty-five dollars on the counter and demanded the money in the safe. Miller told appellant that he did not know the combination. Miller testified he told appellant there was no more money and to just leave. In response, appellant told him and Watson to walk outside in order for Miller to unlock the gate of the impound lot. Finally, Miller testified appellant forced them outside at gunpoint and he unlocked the gate. Prior to leaving, appellant told the men to return to the office, get on the floor, and not call the police. The men returned to the office as appellant instructed.
>
>     . . . .

2

The evidence showed that after appellant left Aristocrat Towing, Miller called the police and gave the necessary information to the police. Approximately ten minutes later, Sergeant Daniel Fiore saw the car. Fiore followed the car and activated his emergency lights, but the driver did not stop. Detective Conklin heard the dispatch and drove behind Fiore. At trial, Conklin testified he saw only one individual in the car. Fiore testified the driver stopped when he reached a dead-end street in a residential neighborhood. Fiore testified he saw only one person in the car and he only briefly lost sight of the car during the pursuit. Moreover, Fiore testified he saw one man jump from the car and run into the woods. Additionally, Fiore testified he could not identify the driver's face, but he could identify the driver's clothes.

Officer Jay Keatley with a K-9 unit assisted in the search, and the officers found appellant hiding in a child's playhouse approximately two hours later. The playhouse was in the backyard of a house near the abandoned car. In this regard, Fiore testified that the man in the playhouse was wearing the same jacket as the driver of the car.

Upon arrest of the appellant, the officers did not find a firearm in appellant's possession or in the car, but the officers did find a firearm on the other side of a privacy fence of the backyard where appellant was found hiding. Conklin testified the firearm was within a foot of the fence line. Miller identified the firearm found near the fence as the one appellant possessed.

In the car, the officers found an open beer bottle with appellant's fingerprints on the bottle. A DMV transcript showed that appellant's driving privilege was suspended at the time of the incident. The dash video from Fiore's vehicle showing the pursuit was admitted into evidence.

Appellant denied being at Aristocrat Towing, denied robbing Miller and Watson, and denied being the driver of the car. Appellant testified he was with his cousin, Eugene Hayes, and an acquaintance by the name of Troy, at a nightclub. Appellant testified that the three of them left the nightclub with Troy driving. Appellant testified he was in the passenger seat drinking a beer and fell asleep. Appellant further testified that when he woke up, he heard Troy yelling profanities and saw a police vehicle chasing them. He stated that he jumped out of the car when Troy made a turn. Moreover, appellant testified he later saw Troy running in the area and that Troy could have discarded the firearm behind the fence. Appellant testified he ran through various backyards, jumped fences, and went inside the playhouse because he was very tired. Finally, appellant testified he woke up because a dog was biting him. Appellant explained it was difficult to put his hands up because of the dog. Appellant explained that the dash video showed Troy driving the car.

Appellant explained that his DNA was transferred to the firearm because he was very sweaty when Troy and Eugene helped him into the car and that Troy transferred appellant's DNA to the firearm when Troy later touched the firearm. Appellant admitted he was a convicted felon.

. . . .

The jury heard the testimony of the witnesses and observed their demeanor. At the conclusion of the evidence, the jury evaluated the conflicts in

the testimony and necessarily determined that the testimony by the Commonwealth's witnesses was more credible than appellant's testimony. It was for the fact finder to determine whether appellant's testimony was self-serving testimony given in an attempt to conceal his guilt. There was sufficient evidence supporting the jury's verdict. The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that appellant was guilty of two counts of abduction, one count each of attempted robbery, robbery, eluding, wearing a mask in public, resisting arrest, four counts of use of a firearm in the commission of a felony, and one count of driving on a suspended license.

(*Id.* at 1–6.) On January 22, 2010, the Supreme Court of Virginia refused Hayes's petition for appeal. (ECF No. 16–2, at 1.) Hayes did not file a petition for a writ of habeas corpus in the Virginia courts.

On or about February 25, 2016, Hayes filed his § 2254 Petition in this Court.[2] (§ 2254 Pet. 9.) In his § 2254 Petition, Hayes asserts the following claim for relief:

Claim One: "The evidence in its totality was insufficient to establish guilt beyond a reasonable doubt in violation of my 14[th] [A]mendment right to due process."[3] (*Id.* at 2 (emphasis omitted).)

## II. ANALYSIS

### A.   Statute of Limitations

Respondent contends that the federal statute of limitations bars Hayes's claim. Section 101 of the Antiterrorism and Effective Death Penalty Act ("AEDPA") amended 28 U.S.C. § 2244 to establish a one-year period of limitation for the filing of a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court. Specifically, 28 U.S.C. § 2244(d) now reads:

---

[2] This is the date that Hayes states he placed his § 2254 Petition in the prison mailing system for mailing to this Court. The Court deems this the filed date. *See Houston v. Lack*, 487 U.S. 266, 276 (1988).

[3] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

1.    A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

    **(A)**   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    **(B)**   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    **(C)**   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    **(D)**   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

2.    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

**B.    Commencement and Running of the Statute of Limitations**

The Supreme Court of Virginia refused Hayes's petition for appeal on January 22, 2010. Hayes's convictions became final on Thursday, April 22, 2010, when the time to file a petition for a writ of certiorari expired. *See Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002) ("[T]he one-year limitation period begins running when direct review of the state conviction is completed or when the time for seeking direct review has expired . . . ." (citing 28 U.S.C. § 2244(d)(1)(A))); Sup. Ct. R. 13(1) (requiring that a petition for certiorari should be filed within ninety days of entry of judgment by the state court of last resort or of the order denying discretionary review). The limitation period began to run on April 23, 2010, and Hayes had until April 23, 2011 to file his § 2254 Petition.[4] Hayes failed to file his § 2254 Petition until February

---

[4] Hayes is not entitled to any statutory tolling under 28 U.S.C. § 2244(d)(2) because he failed to file any state habeas petitions.

5

25, 2016, nearly five years after the limitation period expired. Hayes does not suggest any plausible basis for a belated commencement of the limitation period under 28 U.S.C. § 2244(d)(1)(B)–(D) or equitable tolling. Instead, Hayes argues that his actual innocence excuses his failure to file in a timely manner.

## C.   Actual Innocence

The Supreme Court has recognized actual innocence as a basis for overcoming the expiration of the statute of limitations. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013) (explaining that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations"). "Claims of actual innocence, whether presented as freestanding ones or merely as gateways to excuse a procedural default, should not be granted casually." *Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998) (citations omitted). Here, the Court reviews Hayes's arguments under the more lenient standard for gateway actual innocence claims, because subscribing to Hayes's actual innocence claim would permit the Court to consider the merits of his otherwise time-barred habeas petition.

A gateway claim requires a petitioner to present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Id.* If a petitioner meets the burden of producing new, truly reliable evidence of his or her innocence, the Court then considers "'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial'" and determines whether the petitioner has met the

6

standard for a gateway claim of innocence. *House v. Bell*, 547 U.S. 518, 538 (2006) (quoting *Schlup*, 513 U.S. at 327–28). The Court must determine "whether 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Sharpe v. Bell*, 593 F.3d 372, 377 (4th Cir. 2010) (quoting *Schlup*, 513 U.S. at 327–28). "The Court need not proceed to this second step of the inquiry unless the petitioner first supports his or her claim with evidence of the requisite quality." *Hill v. Johnson*, No. 3:09cv659, 2010 WL 5476755, at *5 (E.D. Va. Dec. 30, 2010) (citing *Weeks v. Bowersox*, 119 F.3d 1342, 1352–53 (8th Cir. 1997); *Feaster v. Beshears*, 56 F. Supp. 2d 600, 610 (D. Md. 1999)). Moreover, actual innocence means factual innocence and not just legal insufficiency. *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (citation omitted).

Here, Hayes's assertion of actual innocence is not coupled with any new evidence of his actual innocence. Rather, Hayes supports his assertion of innocence with the same arguments and based on the same testimony that he presented at trial, which was that he was sleeping, woke up when he heard the driver yell that the police were following them, jumped out of the car, and ran through various backyards before he stopped to fall asleep in a child's playhouse. (§ 2254 Pet. 4–5.) He also contends that the police failed to recover his fingerprints from the door of the tow truck, and that he was "wearing a jacket that was completely different from the one that the perpetrator allegedly wore." (*Id.* at 5.) According to Hayes, the victim described the perpetrator as wearing a camo jacket, but he was wearing a blue jacket that evening. (*Id.*) Hayes's bare assertion of innocence and his rehashing of his trial testimony simply fails to excuse the untimeliness of his § 2254 Petition. *See Lowe v. Zook*, No. 3:15CV631, 2016 WL 3912035, at *4 (E.D. Va. July 19, 2016) (citing *Hill*, 2010 WL 5476755, at *5). Accordingly, Respondent's Motion to Dismiss (ECF No. 15) will be GRANTED.

7

### III.   OUTSTANDING MOTION

Hayes has also filed a Motion for Discovery.  (ECF No. 8.)  Hayes requests that Respondent provide copies of any statements or confessions made by Hayes to law enforcement, as well as "any written reports of autopsies, ballistic tests, fingerprint analyses, handwriting analyses, blood, urine and breath tests, other scientific reports, and written reports of a physical or mental examination of the Petition or the alleged victim . . . ."  (*Id.* at 1.)  Hayes also requests that Respondent provide "all information of whatever form, source or nature that tends to exculpate the Petitioner . . . ."  (*Id.*)  Finally, Hayes requests that the Court direct Respondent "to conduct testing/retesting on items collected during the investigation of the criminal action . . . ."  (*Id.* at 2.)  Hayes contends that he requires these items so that he can locate evidence that demonstrates "a jury would not [have found him] guilty."  (Br. Supp. Mot. for Discovery 5, ECF No. 9.)[5]

Rule 6(a) of the Rules Governing Section 2254 Cases provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure . . . ."  Rules Governing § 2254 Cases Rule 6(a).  Good cause for discovery under Rule 6(a) is shown "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is[] entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 909 (1997) (citation omitted).  Rather than providing specific allegations to suggest that he is entitled to relief, Hayes appears to desire to engage in a fishing expedition to locate evidence that he believes would support his claim of innocence.  Hayes therefore fails to demonstrate good cause to warrant discovery.  Accordingly, his Motion for Discovery (ECF No. 8) will be DENIED.

---

[5] The Court utilizes the pagination assigned to this submission by the CM/ECF docketing system.

## IV.   CONCLUSION

For the foregoing reasons, Respondent's Motion to Dismiss (ECF No. 15) will be GRANTED. Hayes's claim will be DISMISSED, and his § 2254 Petition will be DENIED. Hayes's Motion for Discovery (ECF No. 8) will be DENIED. The action will be DISMISSED. A certificate of appealability will be DENIED.[6]

An appropriate Final Order shall issue.

/s/
Roderick C. Young
United States Magistrate Judge

Date: February 3, 2017
Richmond, Virginia

---

[6] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Hayes fails to meet this standard.